# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

ELVIRA GARCED-URBINA,

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

CIVIL NO.  24-1484 (HRV)

## OPINION AND ORDER

Elvira Garced-Urbina (hereinafter "Ms. Garced" or "Plaintiff"), seeks review of the final administrative decision of the Commissioner of Social Security ("the Commissioner") denying her claim for disability benefits under the Social Security Act ("the Act"). She requests that the Commissioner's decision be reversed and that the case be remanded for further administrative proceedings. The Commissioner opposes, arguing that the decision should be affirmed because it is based on substantial evidence.

After careful consideration of the record, and for the reasons outlined below, the Commissioner's decision is AFFIRMED.

## I.    LEGAL FRAMEWORK

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), any individual may obtain review of a final decision of the Commissioner. Under said statutory provision, the Court is empowered

"to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner…." *Id.*  In addition, the statute provides that if supported by substantial evidence, the findings of the Commissioner as to any fact, shall be conclusive. *Id.*

A reviewing Court must uphold the decision of the Commissioner as long as the Administrative Law Judge ("ALJ") applied the correct legal principles, and the determination is supported by substantial evidence. *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). The scope of my review is, therefore, limited. I am tasked with determining whether the ALJ employed the proper legal standards and focused facts upon the proper quantum of evidence.  *See Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000); *see also Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).

To meet the evidentiary benchmark, more than a scintilla of evidence is required. *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018). But the threshold for evidentiary sufficiency is not particularly high; if after looking at the existing administrative record, the reviewing court is persuaded that it contains sufficient evidence to support the Commissioner's factual determinations, the decision is bound to be affirmed. *See Biestek v. Berryhill*, 587 U.S. 97, 102-03, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019) (cleaned up). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record, could accept it as adequate to support [the] conclusion." *Irlanda-Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). The ALJ's decision must be reversed, however, if it was arrived at "by ignoring evidence, misapplying law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

2

### B. The Five-Step Sequential Evaluation Process

To be eligible for social security benefits, a claimant must demonstrate that he or she is "disabled" within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). The Act defines disability in pertinent part as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a), § 1382c(a)(3)(A). The impairment or impairments must be severe enough that "he [or she] is not only unable to do his [or her] previous work but cannot . . . engage in any other kind of substantial gainful work which exists [in significant numbers] in the national economy...." *Id*., § 423(d)(2), § 1382c(a)(3)(B); *see also* 20 C.F.R. § 404.1520(a)(1).

The Commissioner follows a five-step evaluation process to determine disability. *See Mills v. Apfel*, 244 F.3d 1, 2 (1st Cir. 2001); 20 C.F.R. § 404.1520(a). These steps must be followed in order, and if a person is determined not to be disabled at any step, the inquiry stops. *Id*. The Plaintiff has the burden of proof with respect to the first four steps of the process. *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001).

Step one considers work activity, that is, whether the Plaintiff is currently "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the person is, then she is not disabled under the Act. *Id*. Step two asks whether Plaintiff has a physical or mental impairment, or a combination of impairments, that is severe and meets the Act's duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). Step three considers the medical severity of the Plaintiff's impairments. 20 C.F.R. § 404.1520(a)(4)(iii). At this step, if Plaintiff is determined to have an impairment that meets or equals an impairment listed

in 20 C.F.R. pt. 404, Subpt. P., app. 1, and meets the duration requirements, she is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). On the other hand, if the Plaintiff is not found to be disabled at this step, her Residual Functional Capacity ("RFC") is assessed. 20 C.F.R. § 404.1520(a)(4), (e). Once the ALJ determines the RFC of the claimant, the inquiry proceeds to step four. Step four compares the Plaintiff's RFC to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the Plaintiff can still do her past relevant work, she is not disabled. *Id*. Finally, at step five, the Plaintiff's RFC is considered alongside her "age, education, and work experience to see if [she] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If she can make an adjustment to other work, she is not disabled; if she cannot, she is disabled. *Id*.  At this step, it is the Commissioner who has the burden "to come forward with evidence of specific jobs in the national economy that the applicant can still perform." *Freeman v. Barnhart*, 274 F.3d at 608 (*citing Arocho v. Sec'y of Health & Human. Servs.*, 670 F.2d 374, 375 (1st Cir. 1982)).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ms. Garced originally applied for disability insurance benefits on February 6, 2019, alleging her disability began on November 28, 2017. *See* Transcript of Social Security Proceedings ("Tr."), Docket 15. (Tr. 1075-81). The claim was initially denied on April 23, 2019, and on reconsideration on June 27, 2019. (Tr. 724-46).

On February 19, 2020, a hearing was held presided by ALJ Dory Sutker. Shortly thereafter, on March 4, 2020, the ALJ notified an unfavorable decision. (Tr. 748-59). The Appeals Council remanded on February 8, 2021, with instruction to the ALJ to address three issues. (Tr. 767-68). Following the remand order, the ALJ held telephone hearings over the course of three separate dates in August 2021, June 2022, and January

4

2023.[1] Ms. Garced was represented by non-attorney representative Andew S. Youngman, and by attorneys Sara Rusell, Peter Natale and Jessica Spencer. Vocational experts ("VE") Karyl Kuutlia, Cathleen Spencer, and Kathleen Doehla testified at the hearings. I briefly summarize below the ALJ's written decision issued on May 3, 2023. (Tr. 77-92).

The ALJ determined at Step One of the five-step sequential process that Ms. Garced did not engage in substantial gainful activity since the alleged onset date, that is, November 28, 2017. (Tr. 82). At Step Two, the ALJ found that Plaintiff had the following severe impairments: Depressive Disorder, Anxiety Disorder, and bilateral flexor tenosynovitis and trigger thumbs. (Tr. 83).

Analyzing Step Three, the ALJ concluded that Ms. Garced did not have an impairment or combination of impairments that met or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.). The ALJ first found that the record did not establish that Plaintiff's thumb impairments met or medically equaled listing 1.18. (Tr. 84). Ms. Garced did report bilateral pain, stiffness and swelling, as well as difficulty grasping objects and opening jars. (Id.). And while X-rays showed no arthritis, examinations do show that she likely suffers from trigger thumbs, mild synovitis, and decreased grip strength. (Id.). However, the record did not establish that Ms. Garced cannot perform fine and gross movements with both upper extremities. (Id.). Additionally, she reported being able to bathe and use the toilet on her own, feed herself, make simple meals, sweep, read and write. (Id.).

---

[1] With the consent of Plaintiff, these hearings were held over the telephone due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic.

With respect to Ms. Garced's mental impairments, the ALJ determined that she did not meet or medically equal the criteria in listings 12.04 and 12.06. (Id.). In so finding, the ALJ considered if Paragraph B criteria was satisfied. To satisfy "Paragraph B" criteria, the mental impairment must result in one extreme limitation [2] or two marked limitations[3] in a broad area of functioning. (Id.). The ALJ assessed moderate limitations in all relevant areas. (Tr. 84-85).

First, as to understanding, remembering, or applying information, Plaintiff testified that she has poor memory and concentration, and reported trouble remembering instructions. However, the ALJ noted that mental status showed inconsistent findings regarding memory deficits. (Tr. 84).

Second, with respect to the area of interacting with others, Ms. Garced testified that she stays in her room, keeps to herself, and complained of situational anxiety and difficulties making decisions. Nonetheless, the ALJ underscored that Plaintiff denied having problems getting along with family, friends, neighbors, and authority figures. (*Id.*). During evaluations, she presented a calm and cooperative demeanor, normal speech and interacted well with others. (Id).

Third, as to Ms. Garced's ability to concentrate, persist, or maintain pace, the ALJ also found she had moderate limitations. She testified that she has limited attention and concentration. (Id.). In her function report, Plaintiff estimated that she can only pay

---

[2] An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. 20 C.F.R. pt. 404, subpt. P. app 1.

[3] A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. *Id.*

attention for 15-20 minutes. (Id.). And mental status examinations showed limited concentration at times. (Id)

Lastly, in the area of adapting or managing oneself, only a moderate limitation was assessed because the symptoms of Ms. Garced's reported poor stress tolerance, difficulty adjusting to changes, and dealing with situational stressors, appear to improve with medication. (Id). The record showed no evidence of difficulties identifying normal hazards and taking appropriate precautions and there were no deficits noted by health providers regarding grooming and hygiene. (Tr. 84-85).

Based on the above-outlined findings, the ALJ concluded that Plaintiff's mental impairments did not cause at least two marked limitations or one extreme limitation, and, thus, Paragraph B criteria was not satisfied. (Id.). The ALJ likewise considered if Paragraph C criteria was satisfied, but the evidence fell short of establishing said criteria. (Tr. 85).

Next, and prior to moving to Step Four of the sequential process, the ALJ concluded that Plaintiff had an RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant cannot not [sic] climb ladders, ropes, or scaffolds, and could rarely crawl (meaning one or two times per day). She can never perform forceful gripping, such as that required to use garden shears or pliers. She can never be exposed to unprotected heights and needs an environment that does not require driving while on the job. She can understand, remember, and carry out instructions to perform simple tasks. The claimant can maintain concentration, persistence, and pace for those tasks for two-hour blocks of time throughout the workday, consistent with regularly scheduled breaks and lunch. Within such a setting, she can engage and respond appropriately to supervisors and coworkers. She can tolerate incidental contact with the public (meaning that dealing with the public

> cannot be a part of job duties, but she can tolerate brief encounters). She can use judgment in making work-related decision and can deal with routine changes.

(Id.). In reaching this conclusion, the ALJ indicated that she considered all of Plaintiffs' symptoms to the extent they are consistent with the objective medical evidence as required by 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 16-3p, as well as medical opinions and prior administrative medical findings as mandated by 20 C.F.R. § 404.1520c. (Id).

In following the required two-step process (first determining if the physical or mental impairments could reasonably be expected to produce the pain and/or symptoms alleged, and, second, evaluating the intensity, persistence, and limiting effects of said symptoms to determine the extent to which they limit Plaintiff's work-related activities), the ALJ concluded after a thorough and detailed explanation (Tr. 86-89), that Ms. Garced's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, her testimony regarding the intensity, persistence and limiting effects of such symptoms was not fully credited because it was not entirely consistent with the evidence in the record. (Tr. 86). Thus, the objective medical evidence and medical opinions that form part of the record, the ALJ found, did not call for a more restrictive RFC. (Tr. 89).

The ALJ did find that Ms. Garced was unable to perform any past relevant work (Step Four), but considering her age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that she could perform (Step Five) such as Transportation Cleaner, Hand Packager and Laundry Aid. (Tr. 91). Accordingly, the ALJ held that Ms. Garced was not disabled under the Act. (Tr. 92).

On June 30, 2023, Plaintiff sought review of the ALJ's decision before the Appeals Council. On August 28, 2024, the Appeals Council denied her request for review. (Tr. 1-7). On that date, the ALJ's decision became the Commissioner's final decision.

On October 18, 2024, Plaintiff filed her social security complaint before this Court. (Docket No. 1). Upon consent provided by the parties (Docket Nos. 8, 11) on October 24, 2024, this case was formally referred to the undersigned magistrate judge for all further proceedings including the entry of judgment. (Docket No. 13). Subsequently, on December 17, 2024, the social security transcript was filed on the docket. (Docket No. 15). Plaintiff's social security brief was filed on January 15, 2025. (Docket No. 16), and the Commissioner's on March 14, 2025. (Docket No. 21). Ms. Garced filed a reply to the Commissioner's response on March 28, 2025. (Docket No. 22).

### III.    DISCUSSION

Ms. Garced raises two claims of error in her quest to obtain reversal of the ALJ's decision. First, that the ALJ failed to comply with the Appeals Council's remand order. And second, that the ALJ erred by rendering an RFC containing vague, non-vocationally relevant terms. As to the first issue, Plaintiff generally contends that the ALJ failed to heed the instructions in the remand order regarding the finding that she had moderate limitations in concentration, persistence and maintaining pace. According to Ms. Garced, the ALJ repeated the error that caused the Appeals Council to remand in the first place by again finding moderate limitations in this area of functioning "but no corresponding limitations reflected in the RFC." (Docket No. 15 at 15). In her second claim of error, Ms. Garced takes exception with the inclusion of the non-exertional limitation of forceful gripping. She insists that the term is vague because the term "gripping" is not defined in

the Selected Characteristics of Occupations Manual ("SCO") nor is it included in the definitions for handling and fingering. The error is not harmless, Plaintiff maintains, because the jobs identified by the VE that the ALJ found she could perform, require frequent to constant handling, and/or occasional to constant fingering. Ms. Garced argues that if she is restricted in her ability to forcefully grip, by extension she is also limited in her ability to handle.

The Commissioner responds, as to the first claim, that Plaintiff's argument misinterprets the Appeals Council's instructions on remand. According to the Commissioner, the ALJ clearly complied with the instruction that further consideration be given to the matter of Ms. Garced's ability to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting. In other words, the Appeals Council left undisturbed the findings regarding concentration, persisting, and maintaining pace. The Commissioner faults Plaintiff for focusing only on one aspect of the RFC assessment in the most recent decision but failing to acknowledge the rest of the formulation that directly addressed the issues flagged by the Appeals Council in the remand order. As to the second claim, the Commissioner avers that the Court should reject the argument challenging the forceful gripping non-exertional limitation because the ALJ's finding was legally sound, supported by substantial evidence, and Plaintiff cannot show prejudice. In fact, says the Commissioner, the ALJ gave Ms. Garced the benefit of the doubt and imposed a more restrictive limitation than that supported by the medical evidence. It does not appear that the VE had difficulty understanding the term "forceful gripping" in identifying occupations that

Plaintiff could perform. And the term should not be used interchangeably with a limitation of "frequent to constant handling."

In reply, Ms. Garced insists that while neither the Dictionary of Occupational Titles ("DOT") nor the SCO define the term "gripping", case law equates it with "grasping." Grasping, in turn, is included under the definition of "handling." Based on this, the argument goes, both terms—gripping and grasping—should be used interchangeably and any limitation in forceful gripping similarly impacts the ability of a claimant to "handle." Following this logic, Ms. Garced contends that if she is restricted to no forceful gripping, she can never handle. Thus, the Step Five conclusions of the ALJ are subject to reversal for she cannot perform the demands of the identified jobs.

## A. Appeals Council's Remand Order

The Social Security regulations require an ALJ to take any action on remand that is ordered by the Appeals Council. *See* 20 C.F.R. § 404.977.[4]  Federal courts have the authority to evaluate an ALJ's compliance with an Appeals Council's remand order. *Noreja v. Comm'r., SSA*, 952 F.3d 1172, 1177 (10th Cir. 2020). Indeed, "[w]hen the Appeals Council remands a case with instructions, those instructions become legal requirements with which the ALJ is bound to comply." *Id.* at 1179. Consequently, judicial review under 42 U.S.C. § 405(g), which as noted above involves, in part, a determination whether the Commissioner applied correct legal standards, certainly encompasses

_____

[4] "The administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b).

deciding a challenge to the ALJ's adherence to the Appeals Council remand order. *See Ellis v. Colvin*, 29 F. Supp. 3d 288, 300 (W.D.N.Y. 2014) (holding that an ALJ's failure to follow directions from the Appeals Council is legal error even where the Appeals Council affirms the ALJ's subsequent decision.). Nevertheless, for reversal and remand to be warranted in cases where the ALJ did not take the action ordered by the Appeals Council, the claimant must still show that the error resulted in prejudice. *Stevenson v. Saul*, No. 19-cv-11202-DJC, 2020 U.S. Dist. LEXIS 180353, at * 26 (D. Mass. Sept. 30, 2020) (*citing Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009)).

In her original decision, the ALJ found in relevant part as follows:

> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. In March 2018, Dr. Rodriguez observed that the claimant presented with good attention and concentration. In February 2019, he also observed that attention and concentration were intact. This was again observed in March 2019. However, in July 2019, he asserted that she has moderately impaired attention and concentration.

(Tr. 755) (record citations omitted). The Appeals Council remanded after finding, inter alia, that further consideration of this issue was needed. The order specifically noted:

> The hearing decision found that the claimant possessed moderate difficulties with regard to concentrating, persisting, or maintaining pace, and noted that the claimant had moderately impaired attention and concentration (Decision, Page 5). While the assessed residual functional capacity limits the claimant to tasks that are typically learned in less than 30 days (Decision, Finding 5), **it does not address the claimant's ability to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers, and work situations; and**

**deal with changes in a routine work setting** (Social Security Ruling 85-16 and 96-8p).

(Tr. 767) (emphasis added). In view of such conclusion, the ALJ was ordered to "[g]ive further consideration to the maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 85-16 and 96-8p)." (Tr. 768).

To determine if there was any non-compliance by the ALJ with the Appeals Council mandate, I compare the remand order with the subsequent decision issued. In the new decision, the one currently under review, it is clear that the ALJ discussed and made specific findings regarding the issue that the Appeals Council instructed her to consider further. Specifically, the ALJ conducted a detailed analysis of the evidence in the record as follows:

> In understanding, remembering, or applying information, the claimant had a moderate limitation. The claimant testified that she has poor memory and concentration, and in her function report, she stated that she has trouble remembering instructions (Ex. 4E). The claimant complained of memory problems at times, but mental status examinations showed inconsistent findings for memory deficits. Sometimes the claimant exhibited mild short-term or long-term memory deficits (e.g., Ex. 16F/28; 26F/9), but many other times the claimant exhibited intact memory and thought process (e.g., Ex. 1F/5; 26F/2-4, 12; 30F/25; 31F/34).
>
> In interacting with others, the claimant had a moderate limitation. The claimant testified that she often stays in her room and keeps to herself. She still talks with her daughter and grandchildren (Ex. 4E; Hearing Testimony). The claimant denied having problems getting along with family, friends, neighbors, or authority figures (Ex. 4E). Providers noted that the claimant was often calm, and cooperative, with normal speech, and she interacted well during evaluations (e.g., Ex.

1F/5;   26F/2-4,   12;   30F/25;   31F/34).   The claimant complained of situational anxiety and difficulty making decisions (e.g., Ex. 26F/11).

With regard to concentrating, persisting or maintaining pace, the claimant had a moderate limitation. The claimant testified that she has limited attention and concentration, and in her function report, she estimated that she could only pay attention for 15-20 minutes (Ex. 4E). Mental status examinations showed that the claimant had limited concentration at times (e.g., Ex. 11F/21; 26F/2-4, 8).

As for adapting or managing oneself, the claimant had experienced a moderate limitation. The claimant reported that she has poor stress tolerance and difficulty adjusting to changes (Ex. 4E; Hearing Testimony). Providers noted the claimant's difficulty with certain situational stressors, but the claimant reported improved symptoms with medications (e.g., Ex. 26F/7; 31F/16). There is no evidence that she has trouble being aware of normal hazards or intaking appropriate precautions. Providers did not observe significant deficits to grooming or hygiene.

(Tr. 84-85). Then, in the RFC, I can readily see the limitations that flow from the ALJ's consideration of the evidence outlined above, namely, that Plaintiff "can understand, remember, and carry out instructions to perform simple tasks . . .  [;] can maintain concentration, persistence, and pace for those tasks for two-hour blocks of time throughout the workday, consistent with regularly scheduled breaks and lunch . . . [;] can engage and respond appropriately to supervisors and coworkers . . . [;] can tolerate incidental contact with the public (meaning that dealing with the public cannot be a part of job duties, but she can tolerate brief encounters) . . . [; and] can use judgment in making work-related decision and can deal with routine changes." (Tr. 85).

Based on the above, I must reject the claim that the ALJ repeated the error with respect to the matter of concentration, persistence and pace because that was not the

basis for the remand. Moreover, even though it was not the issue to be addressed on remand, to the extent Ms. Garced continues to be of the view that the finding of moderate limitation in concentrating, persisting and maintaining pace should have resulted in a more restrictive RFC, I find that her argument is without merit under the substantial evidence standard. She asserts categorically that "[a] limitation to unskilled work does not account for the Plaintiff's moderate limitations in the area of concentration, persistence, and pace." (Docket No. 16 at 13). I disagree.

The applicable regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). It includes jobs that a person can learn to do in 30 days and where little specific vocational preparation and judgment are needed. *Id*. Further, unskilled work generally requires only the following mental activities: (1) "[u]nderstanding, remembering, and carrying out simple instructions"; (2) "[m]aking judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions"; (3) "[r]esponding appropriately to supervision, co-workers and usual work situations"; and (4) "[d]ealing with changes in a routine work setting." SSR 96-9p, 1996 SSR LEXIS 6 at *26, 1996 WL 374185, at *9 (July 2, 1996). And case law holds that "[a] finding of moderate limitations in maintaining concentration, persistence, or pace, does not necessarily preclude the performance of unskilled work." *Perry v. Astrue*, No. 11-40215-TSH, 2014 U.S. Dist. LEXIS 139575, at * 15 (D. Mass. Sept. 30, 2014); *see also Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (concluding that limiting plaintiff to a Specific Vocational Preparation (SVP) of only one or two adequately took into account his moderate limitation in concentration, persistence and pace).

Plaintiff also perfunctorily advances an argument that there was no mention of Plaintiff's moderate limitation in concentration, persistence, and pace during the ALJ's hypotheticals to the VE. Even if the claim had been fully developed, it would not change the outcome. The ALJ told the VE to assume, among other things, that Ms. Garced could "maintain concentration, persistence, and pace for two-hour blocks of time throughout the workday, consistent with regularly scheduled breaks and lunch." (Tr. 119). Based in part on said limitation, the VE identified jobs existing in the national economy in significant numbers that were categorized SVP one or two, which, as noted, correspond to unskilled work.[5] Thus, it appears that the ALJ explicitly accounted for the moderate difficulties of the Plaintiff with respect to concentration, persistence and pace when posing the hypothetical. *See De Jesus-Rodriguez v. Comm'r of Soc. Sec.*, No. 19-cv-1308 (BJM), 2022 WL 4494135, 2022 U.S. Dist. LEXIS 179228, at *27-31 (D.P.R. Sep. 28, 2022). I must, therefore, reject this claim of error.

## B.  Challenge to the ALJ's RFC Determination – Forceful Gripping

Notwithstanding the fact that the ALJ did not seem inclined to find that Plaintiff's hand impairments imposed any limitations on her ability to do work-related activities, she decided to give Plaintiff the benefit of the doubt based on her testimony. The medical

---

[5] *See* Social Security Ruling ("SSR") 00-4p, 2000 SSR LEXIS 8, 2000 WL 1898704, at *3 (Dec. 4, 2000) ("Using the skill level definitions in 20 C.F.R. 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2.").

evidence, however, was not necessarily consistent with her subjective complaints.[6] (Tr. 86-87). Regardless, I find no merit in Ms. Garced's conclusory assertion that a limitation on forceful gripping as determined by the ALJ, means that she can never handle so that it was error for the ALJ to adopt the VE's recommendation of jobs she can perform. For starters, Plaintiff did not cite any authority in support of such proposition. *See King v. Astrue*, No. 10-cv-235-DBH, 2011 WL 1158247, 2011 U.S. Dist. LEXIS 32712, at *7 (D. Me. Mar. 25, 2011) (noting that claimant did not cite any authority defining inability to grip forcefully in a manner that is inconsistent with the concept of handling). On the other hand, the case law cited by the Commissioner, as well as case law that my research uncovered, makes such argument unavailing in any event.

The act of gripping/grasping should not be conflated with handling and these terms should not be used interchangeably. *Cartagena v. Colvin*, No. 14-0884-DFM, 2014 WL 4978511, 2014 U.S. Dist. LEXIS 142255, at *7 (C.D. Cal. Oct. 6, 2014) (*quoting Czajka v. Astrue*, No. 09-0194, 2010 U.S. Dist. LEXIS 85131, 2010 WL 3293350, at *4, (C.D. Cal. Aug. 18, 2010)) ("The act of grasping requires a firm hold or grip. Handling can mean simply touching or using the hands. It is improper to conflate the two terms.").

---

[6] The ALJ specifically found:

> As discussed above, the claimant has required little treatment for her hands after receiving a few injections in 2019. Follow-up evaluations showed improved grip strength overall, and she did not complain of ongoing symptoms to other providers. Treatment notes do not reference complaints consistent with the claimant's allegations at the hearing. The record supports some limitations related to her hands, but not to the extent alleged.

(Tr. 87).

Moreover, even if gripping or grasping was a subset of handling activities—as suggested by Ms. Garced—the restriction imposed by the ALJ was about **forceful** gripping which is a matter of degree. Thus, "the inability to forcefully perform a subset of handling activities does not eliminate *all* handling activities." *Elizabeth K. v. Comm'r of Soc. Sec.*, No. 19-cv-1671-FPG, 2021 WL 1175848, 2021 U.S. Dist. LEXIS 59839, at *16 (W.D.N.Y. Mar. 29, 2021) (emphasis in original).

What's more, the ALJ provided an example of the restriction imposed. She said that Ms. Garced could not "perform forceful gripping, such as that required to use garden shears or pliers." (Tr. 85). The example illustrates the level and degree of the manipulative limitation. Hence, I would be hard-pressed to find vagueness or ambiguity. The case of *Agustine v. Astrue*, No. 11 Civ. 3886 (BMC), 2012 WL 2700507, 2012 U.S. Dist. LEXIS 93961, at *31-32 (E.D.N.Y. July 5, 2012) is instructive of the point:

> [a]lthough 'handling' and 'grasping' are similar words, the word 'grasping' implies a degree of force that does not attach to the word 'handling.' Moreover, the words 'forceful' and 'repetitive' modify 'grasping,' and an individual may easily be capable of 'frequent handling' even if she is restricted from 'repetitive forceful grasping.'

Here, even assuming arguendo that gripping is synonymous with handling, the ALJ's RFC assessment can only be read as restricting Ms. Garced's ability to handle forcefully.

In sum, the record shows that the ALJ formulated a more restrictive RFC than perhaps was justified in light of the medical evidence.  In so doing, it gave Ms. Garced the benefit of the doubt and imposed the limitation of no forceful gripping. As explained, gripping is not a vague concept and cannot be conflated with handling. But even if both terms could be used interchangeably, the modifier "forcefully" adds a matter of degree

that clearly distinguishes between both terms. As such, it does not follow that a claimant with limitations on forceful gripping can never handle as Plaintiff would have the Court find. Accordingly, because there was no error in the formulation of the RFC, the Step Five finding with respect to occupations identified was not tainted and reversal is not warranted. *See Equihua v. Astrue*, No. EDCV 10-0122-JEM, 2011 WL 321993, 2011 U.S. Dist. LEXIS 8526, at *16-17 (C.D. Cal. Jan. 28, 2011).

## IV.   CONCLUSION

In light of the foregoing, I find that the decision of the ALJ is supported by substantial evidence and free of legal error. Therefore, the decision of the Commissioner is hereby AFFIRMED.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 28th day of August 2025.

<u>S/Héctor L. Ramos-Vega</u>
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE